# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDGAR L. BENITEZ,<br><br>             Plaintiff,<br><br>        v.<br><br>SIERRA CONSERVATION CENTER, WARDEN, *et al.*,<br><br>             Defendants. | Case No. 1:21-cv-00370-BAM (PC)<br><br>ORDER DIRECTING CLERK OF COURT TO RANDOMLY ASSIGN DISTRICT JUDGE TO ACTION<br><br>FINDINGS AND RECOMMENDATIONS TO DISMISS ACTION, WITH PREJUDICE, FOR FAILURE TO STATE A CLAIM, FAILURE TO OBEY COURT ORDER, AND FAILURE TO PROSECUTE<br><br>(ECF No. 12)<br><br>**FOURTEEN (14) DAY DEADLINE** |

## I. Background

Plaintiff Edgar L. Benitez ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action under 42 U.S.C. § 1983. This matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

On July 21, 2021, the Court issued a screening order granting Plaintiff leave to file a third amended complaint or a notice of voluntary dismissal within thirty (30) days. (ECF No. 12.) The Court expressly warned Plaintiff that the failure to comply with the Court's order would result in a recommendation for dismissal of this action, with prejudice, for failure to obey a court order and for failure to state a claim. (*Id.* at 11.) The deadline has expired, and Plaintiff has failed to

file an amended complaint or otherwise communicate with the Court.

## II. Failure to State a Claim

### A. Screening Requirement

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915A(b).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss*, 572 F.3d at 969.

### B. Plaintiff's Allegations

Plaintiff is currently housed at Growlersburg Conservation Camp, in Georgetown, California. The events in the complaint are alleged to have occurred at Sierra Conservation Center, Jamestown, California ("SCC"). Plaintiff names the following defendants: (1) Patrick Eaton, Warden, and (2) Karen Brown, CEO of Healthcare Services. Plaintiff alleges two claims for violation of the Eighth Amendment. Defendants are sued in their individual capacities.

///

1     Growlersburg Conservation Camp had a total of 14 inmates test positive for COVID 19.
2 Plaintiff tested negative two times in January 2021.  Plaintiff was transferred to Sierra
3 Conservation Center on January 18, 2021, due to policies set for COVID 19 outbreak enacted by
4 the Warden of Sierra Conservation Center and the CEO of Health Care Services.

5     Plaintiff was introduced to dorm 21 and locked in a dorm with twenty-two (22) other
6 inmates who were transferred.  Plaintiff asked correctional officers to be housed individually so
7 as not to be exposed to COVID 19.  Plaintiff was told due to the policies created by Defendants;
8 he was to stay in dorm 21 with 22 other inmates.

9     Plaintiff was tested for COVID 19 multiple times during the 10-day lock up on the dorm.
10 Plaintiff was restricted in movement outside of the dorm and could not move more than three feet
11 way from another inmate because of the size of the cell.

12     SCC quarantined inmates with negative COVID 19 test results, but did not keep inmates
13 who were COVID-resolved or positive asymptomatic inmates away from the quarantined dorms.
14 After ten days, on January 28, 2021, 14 of the 22 inmates housed in the dorm with Plaintiff tested
15 positive for COVID 19.  Plaintiff was moved on January 28, 2021 to an isolation wing and was
16 housed in cell 232 with one other inmate from Growlersburg Conservation camp who had been
17 housed with Plaintiff in dorm 21.  Plaintiff was only allowed out of his cell to shower or place
18 phone call every other day.  Plaintiff was denied all of his privileges to his personal and religious
19 property, canteen, and any physical activities due to the policies created by the Warden and CEO
20 of Health Care Service at SCC.  Inmates in the adjoining cell, with whom Plaintiff shared an air
21 vent, tested positive for COVID 19.  Plaintiff was tested on three occasions while in cell 232 and
22 tested negative.  His body temperature was checked twice daily.

23     On February 12, 2021, Plaintiff was transferred back to Growlersburg Conservation
24 Camp.  During 26 days at SCC, Plaintiff was repeatedly exposed to COVID due to the policies
25 created by Defendants.  Plaintiff was denied all privileges set forth in Title 15, §3044 for his work
26 and privilege group as designated for Plaintiff in the Strategic Offender Management System.
27 Plaintiff alleges that the policies exposed Plaintiff, through deliberate indifference, to conditions
28 that pose an unreasonable risk to serious harm to his future health.  As a direct result, Plaintiff has

3

suffered loss of sleep, appetite, nightmares, claustrophobia, pain and suffering, degradation, emotional distress, mental distress and other injuries.

Plaintiff seeks declaratory relief and monetary damages and punitive damages.

**C.     Discussion**

Plaintiff's complaint fails to comply with Rule 8 and fails to state a cognizable claim under 42 U.S.C. § 1983.

**1.     Federal Rule of Civil Procedure 8**

Pursuant to Federal Rule of Civil Procedure 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citation omitted). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). While factual allegations are accepted as true, legal conclusions are not. *Id.*; *see also Twombly*, 550 U.S. at 556–57.

Although Plaintiff's complaint is relatively short, it is not a plain statement of his claims. As a basic matter, the complaint does not clearly state what happened, when it happened or who was involved. Plaintiff's allegations must be based on facts as to what happened and not conclusions. In particular, Plaintiff attributes all overcrowding and housing issues to the named defendants, but does not state what each person did or did not do which violated his constitutional rights.

**2.     Supervisor Liability**

Insofar as Plaintiff is attempting to sue Defendants Eaton and Brown, or any other defendant, based solely upon his supervisory role, he may not do so. Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior. *Iqbal*, 556 U.S. at 676–77; *Simmons v. Navajo Cty., Ariz.,* 609 F.3d 1011, 1020–21 (9th Cir. 2010); *Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).

Supervisors may be held liable only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989*); accord Starr v. Baca*, 652 F.3d 1202, 1205–06 (9th Cir. 2011); *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Corales*, 567 F.3d at 570.

Supervisory liability may also exist without any personal participation if the official implemented "a policy so deficient that the policy itself is a repudiation of the constitutional rights and is the moving force of the constitutional violation." *Redman v. Cty. of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (citations and quotations marks omitted), abrogated on other grounds by *Farmer v. Brennan*, 511 U.S. 825 (1970). To prove liability for an action or policy, the plaintiff "must . . . demonstrate that his deprivation resulted from an official policy or custom established by a . . . policymaker possessed with final authority to establish that policy." *Waggy v. Spokane Cty. Wash.*, 594 F.3d 707, 713 (9th Cir. 2010). When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient. *See Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

Plaintiff has failed to allege direct participation in the alleged violations. Plaintiff talks about failings in the housing, social distancing, overcrowding in dorms, prison movement, and possibly other deficiencies. Plaintiff has failed to allege the causal link between each defendant and the claimed constitutional violation which must be specifically alleged. He does not make a sufficient showing of any personal participation, direction, or knowledge on these defendants' part regarding any other prison officials' actions. Plaintiff has not alleged that these defendants personally participated in the alleged deprivations.

In addition, it is unclear what the policy is that is purportedly at issue. Plaintiff has failed to "demonstrate that his deprivation resulted from an official policy or custom established by

5

a . . . policymaker possessed with final authority to establish that policy." Plaintiff alleges "COVID policies," but that conclusory allegation is sufficient.

### 3. Deliberate Indifference to Conditions of Confinement

Plaintiff presents his Eighth Amendment claims as conditions of confinement claims rather than a deliberate indifference to serious medical needs.[1] He challenges the exposure to COVID due to the overcrowded and other conditions.

Conditions of confinement may, consistent with the Constitution, be restrictive and harsh. *See Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006); *Osolinski v. Kane*, 92 F.3d 934, 937 (9th Cir. 1996); *Jordan v. Gardner*, 986 F.2d 1521, 1531 (9th Cir. 1993) (en banc).  Prison officials must, however, provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." *Toussaint v. McCarthy*, 801 F.2d 1080, 1107 (9th Cir. 1986), abrogated in part on other grounds by *Sandin v. Connor*, 515 U.S. 472 (1995); *see also Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000); *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982); *Wright v. Rushen*, 642 F.2d 1129, 1132–33 (9th Cir. 1981).

Two requirements must be met to show an Eighth Amendment violation. *Farmer*, 511 U.S. at 834.  "First, the deprivation must be, objectively, sufficiently serious." *Id.* (internal quotation marks and citation omitted).  Second, "prison officials must have a sufficiently culpable state of mind," which for conditions of confinement claims, "is one of deliberate indifference." *Id.* (internal quotation marks and citation omitted).  Prison officials act with deliberate indifference when they know of and disregard an excessive risk to inmate health or safety. *Id.* at 837.  The circumstances, nature, and duration of the deprivations are critical in determining

---

[1] Plaintiff's allegations demonstrate that he was provided medical care. Medical nurses where coming to screen inmates and he was tested. When an adjacent cell's inmates tested positive, Plaintiff was moved to isolation and medical staff checked on him daily. This conduct does not show subjective recklessness. Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012). The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), overruled in part on other grounds, *Peralta v. Dillard*, 744 F.3d 1076, 1082-83 (9th Cir. 2014).

1  whether the conditions complained of are grave enough to form the basis of a viable Eighth

2  Amendment claim. *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2006). Mere negligence on the

3  part of a prison official is not sufficient to establish liability, but rather, the official's conduct

4  must have been wanton. *Farmer*, 511 U.S. at 835; *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir.

5  1998).

6  Extreme deprivations are required to make out a conditions of confinement claim, and

7  only those deprivations denying the minimal civilized measure of life's necessities are

8  sufficiently grave to form the basis of an Eighth Amendment violation. *Farmer*, 511 U.S. at 834;

9  *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). The circumstances, nature, and duration of the

10 deprivations are critical in determining whether the conditions complained of are grave enough to

11 form the basis of a viable Eighth Amendment claim. *Johnson*, 217 F.3d at 731. The Eighth

12 Amendment "requires that inmates be furnished with the basic human needs, one of which is

13 'reasonable safety,' " and "hold[ing] convicted criminals in unsafe conditions" constitutes cruel

14 and unusual punishment. *Id.* at 33 (upholding a prisoner's Eighth Amendment claim that he faced

15 possible future harm from exposure to environmental tobacco smoke). Second, the prison official

16 must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety . . . ." *Farmer*, 511

17 U.S. at 837. Thus, a prison official may be held liable under the Eighth Amendment for denying

18 humane conditions of confinement only if he knows that inmates face a substantial risk of harm

19 and disregards that risk by failing to take reasonable measures to abate it. *Id.* at 837–45.

20 It is clear that COVID-19 poses a substantial risk of serious harm. *See Plata v. Newsom*,

21 445 F. Supp. 3d 557, 559 (N.D. Cal. Apr. 17, 2020) ("[N]o one questions that [COVID-19] poses

22 a substantial risk of serious harm" to prisoners.); *see also Williams v. Dirkse*, No. 1:21-cv-00047-

23 BAM (PC), 2021 U.S. Dist. LEXIS 103673, at *22–23 (E.D. Cal. June 2, 2021) ("The

24 transmissibility of the COVID-19 virus in conjunction with [the prisoner plaintiff's] living

25 conditions are sufficient to satisfy that 'conditions put the plaintiff at substantial risk of suffering

26 serious harm.' "); *accord Sanford v. Eaton*, No. 1:20-CV-00792-BAM(PC), 2021 WL 3021447,

27 at *7 (E.D. Cal. July 16, 2021). However, in order to state a cognizable Eighth Amendment claim

28 against the warden and the Health Executive Officer, Plaintiff must provide more than

generalized allegations that the warden and the Health Executive Officer have not done enough regarding control the spread. *See Booth v. Newsom*, No. 2:20-cv-1562 AC P, 2020 WL 6741730, at *3 (E.D. Cal. Nov. 17, 2020); *Blackwell v. Covello*, No. 2:20-CV-1755 DB P, 2021 WL 915670, at *3 (E.D. Cal. Mar. 10, 2021) (failure to state a claim against warden for failure to adequately control the spread of COVID-19 in the prison).

As an initial matter, the Court notes that overcrowding, by itself, is not a constitutional violation. *Doty v. Cty. of Lassen*, 37 F.3d 540, 545 n.1 (9th Cir. 1994); *Hoptowit v. Ray*, 682 F.2d at 1248–49 (noting that overcrowding itself not Eighth Amendment violation but can lead to specific effects that might violate Constitution), abrogated in part on other grounds by *Sandin v. Conner*, 515 U.S. 472 (1995); *see Balla v. Idaho State Bd. of Corr.*, 869 F.2d 461, 471 (9th Cir. 1989) (allegations of prison overcrowding alone are insufficient to state a claim under the Eighth Amendment.); *see also Rhodes v. Chapman*, 452 U.S. at 348–49 (double-celling of inmates by itself does not inflict unnecessary or wanton pain or constitute grossly disproportionate punishment in violation of Eighth Amendment). An overcrowding claim is cognizable only if the plaintiff alleges that crowding has caused an increase in violence, has reduced the provision of other constitutionally required services, or has reached a level rendering the institution no longer fit for human habitation. *See Balla*, 869 F.2d at 471; *see, e.g.*, *Akao v. Shimoda*, 832 F.2d 119, 120 (9th Cir. 1987) (per curiam) (as amended) (reversing district court's dismissal of claim that overcrowding caused increased stress, tension, and communicable disease among inmate population); *Toussaint v. Yockey*, 722 F.2d 1490, 1492 (9th Cir. 1984) (affirming that Eighth Amendment violation may occur as result of overcrowded prison conditions causing increased violence, tension, and psychiatric problems).

Plaintiff alleges that the overcrowding/lack of distance between inmates has exacerbated the conditions leading to transmission of COVID. Plaintiff alleges that there is no way to socially distance, among other conditions. The Court recognizes that "[p]risons present unique concerns regarding the spread of this virus; by their very nature, prisons are confined spaces unsuited for 'social distancing.'" *Evdokimow v. Doll*, No. 4:21-CV-00261, 2021 WL 767554, at *6 (M.D. Pa. Feb. 26, 2021). Nevertheless, CDC guidelines specifically contemplate that individuals will be

confined within prisons during the duration of this pandemic. *See* Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html (last visited July 20, 2021).

The transmissibility of the COVID-19 virus in conjunction with Plaintiff's living conditions, which he alleges were overcrowded and poorly ventilated, are sufficient to satisfy the objective prong, i.e., that Plaintiff was "incarcerated under conditions posing a substantial risk of serious harm." The pertinent question in determining whether Plaintiff states a claim is whether the actions by Defendants Eaton and Brown demonstrated deliberate indifference to that risk of harm. The key inquiry is not whether Defendants perfectly responded, complied with every CDC guideline, or whether their efforts ultimately averted the risk; instead, the key inquiry is whether they "responded reasonably to the risk." *See Stevens v. Carr*, No. 20-C-1735, 2021 WL 39542, at *4 (E.D. Wis. Jan. 5, 2021).

Plaintiff details the many measures implemented in order to protect the inmates from the risks of contracting COVID-19, including quarantine, isolation, vitals check, and housing movement. Even if the response at SCC has been inadequate, it has not disregarded a known risk or failed to take any steps to address the risk. *Wilson*, 961 F.3d at 843 (6th Cir. 2020). Moreover, Plaintiff fails to attribute any specific conduct to these defendants, other than that they were supervisors. As explained, *supra,* supervisor liability is insufficient to state a cognizable claim against these defendants. *See Willard v. Cal. Dep't of Corr. & Rehab.*, No. 14-0760, 2014 WL 6901849, at *4 (E.D. Cal. Dec. 5, 2014) ("To premise a supervisor's alleged liability on a policy promulgated by the supervisor, plaintiff must identify a specific policy and establish a 'direct causal link' between that policy and the alleged constitutional deprivation."). The Court is not discounting Plaintiff's concerns about contracting COVID-19. His concerns are valid and significant. However, nothing in his complaint suggests that Defendants Eaton and Brown disregarded the risk Plaintiff faced. Accordingly, he fails to state a claim against them.

///

**4.     Violation of Title 15**

Plaintiff alleges he was denied all privileges set forth in Title 15, § 3044 for his work and privilege group as designated for Plaintiff in the Strategic Offender Management System.

To the extent that defendants have not complied with applicable state statutes or prison regulations regarding inmate property, this deprivations does not support a claim under § 1983. Section 1983 only provides a cause of action for the deprivation of federally protected rights. "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, [s]ection 1983 offers no redress." *Sweaney v. Ada Cty., Idaho*, 119 F.3d 1385, 1391 (9th Cir. 1997) (quoting *Lovell v. Poway Unified Sch. Dist.*, 90 F.3d 367, 370 (9th Cir. 1996)); *see Davis v. Kissinger*, No. CIV S-04-0878-GEB-DAD-P, 2009 WL 256574, *12 n. 4 (E.D. Cal. Feb. 3, 2009). Nor is there any liability under § 1983 for violating prison policy. *Cousins v. Lockyer*, 568 F.3d 1063, 1070 (9th Cir. 2009) (quoting *Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997)). Thus, the violation of any state law or regulation that reaches beyond the rights protected by the federal Constitution and/or the violation of any prison regulation, rule or policy does not amount to a cognizable claim under federal law, nor does it amount to any independent cause of action under § 1983. Accordingly, plaintiff cannot maintain a § 1983 claim for violations of Title 15 or other California law.

**III.    Failure to Prosecute and Failure to Obey a Court Order**

**A.    Legal Standard**

Local Rule 110 provides that "[f]ailure . . . of a party to comply with these Rules or with any order of the Court may be grounds for imposition by the Court of any and all sanctions . . . within the inherent power of the Court." District courts have the inherent power to control their dockets and "[i]n the exercise of that power they may impose sanctions including, where appropriate, . . . dismissal." *Thompson v. Hous. Auth.*, 782 F.2d 829, 831 (9th Cir. 1986). A court may dismiss an action, with prejudice, based on a party's failure to prosecute an action, failure to obey a court order, or failure to comply with local rules. *See, e.g.*, *Ghazali v. Moran*, 46 F.3d 52, 53–54 (9th Cir. 1995) (dismissal for noncompliance with local rule); *Ferdik v. Bonzelet*,

963 F.2d 1258, 1260–61 (9th Cir. 1992) (dismissal for failure to comply with an order requiring amendment of complaint); *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 130–33 (9th Cir. 1987) (dismissal for failure to comply with court order).

In determining whether to dismiss an action, the Court must consider several factors: (1) the public's interest in expeditious resolution of litigation; (2) the Court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions. *Henderson v. Duncan*, 779 F.2d 1421, 1423 (9th Cir. 1986); *Carey v. King*, 856 F.2d 1439, 1440 (9th Cir. 1988).

### B.  Discussion

Here, Plaintiff's third amended complaint is overdue, and he has failed to comply with the Court's orders. The Court cannot effectively manage its docket if Plaintiff ceases litigating his case. Thus, the Court finds that both the first and second factors weigh in favor of dismissal.

The third factor, risk of prejudice to defendant, also weighs in favor of dismissal, since a presumption of injury arises from the occurrence of unreasonable delay in prosecuting an action. *Anderson v. Air W.*, 542 F.2d 522, 524 (9th Cir. 1976). The fourth factor usually weighs against dismissal because public policy favors disposition on the merits. *Pagtalunan v. Galaza*, 291 F.3d 639, 643 (9th Cir. 2002). However, "this factor lends little support to a party whose responsibility it is to move a case toward disposition on the merits but whose conduct impedes progress in that direction," which is the case here. *In re Phenylpropanolamine (PPA) Products Liability Litigation*, 460 F.3d 1217, 1228 (9th Cir. 2006) (citation omitted).

Finally, the Court's warning to a party that failure to obey the court's order will result in dismissal satisfies the "considerations of the alternatives" requirement. *Ferdik*, 963 F.2d at 1262; *Malone*, 833 at 132–33; *Henderson*, 779 F.2d at 1424. The Court's July 21, 2021 screening order expressly warned Plaintiff that his failure to file an amended complaint would result in a recommendation of dismissal of this action, with prejudice, for failure to obey a court order and for failure to state a claim. (ECF No. 12, p. 11.) Thus, Plaintiff had adequate warning that dismissal could result from his noncompliance.

///

Additionally, at this stage in the proceedings there is little available to the Court that would constitute a satisfactory lesser sanction while protecting the Court from further unnecessary expenditure of its scarce resources.  Plaintiff is proceeding *in forma pauperis* in this action, making monetary sanctions of little use, and the preclusion of evidence or witnesses is likely to have no effect given that Plaintiff has ceased litigating his case.

## IV.     Conclusion and Recommendation

Accordingly, the Court HEREBY ORDERS the Clerk of the Court to randomly assign a district judge to this action.

Further, the Court finds that dismissal is the appropriate sanction and HEREBY RECOMMENDS that this action be dismissed, with prejudice, for failure to state a claim pursuant to 28 U.S.C. § 1915A, for failure to obey a Court order, and for Plaintiff's failure to prosecute this action.

These Findings and Recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **fourteen (14) days** after being served with these Findings and Recommendation, Plaintiff may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Plaintiff is advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:    **September 7, 2021**              /s/ *Barbara A. McAuliffe*
                                              UNITED STATES MAGISTRATE JUDGE